UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

BLACK WARRIOR RIVER-          )
KEEPER, INC.,                 )
                             )
          Plaintiff,          )
                             )
v.                            )        Case No. _____
                             )
SOUTHEASTERN CHEESE           )
CORPORATION and              )
SOUTHEASTERN ENERGY           )
AND FERTLIZER, LLC            )
                             )
          Defendants.         )
_____ )

## COMPLAINT

Plaintiff Black Warrior Riverkeeper, Inc. ("Riverkeeper") files this Complaint against Defendants Southeastern Cheese, LLC ("Southeastern Cheese") and Southeastern Energy and Fertilizer, LLC ("Southeastern Energy") for violating sections of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311 and 1342, by illegally discharging industrial wastewater into tributaries of Cottonwood Creek and ultimately to Cottonwood Creek without a required Clean Water Act permit. Riverkeeper seeks a declaratory judgment, injunctive relief and civil penalties, together with attorneys' fees and costs.

## Nature of the Case

1.    This citizen suit is brought pursuant to § 1365(a)(1) of the Federal Water Pollution Control Act (commonly known as the "Clean Water Act" or "CWA") to compel Southeastern Cheese to cease the intentional and unpermitted discharge of pollutants into navigable waters of the United States, or to obtain a National Pollutant Discharge Elimination System ("NPDES") permit required by the Clean Water Act for the discharge of pollutants into navigable waters.  The Act expressly prohibits the discharge of any pollutants except those that are sanctioned by a permit.  *See* 33 U.S.C. § 1311(a).

2.    Southeastern Cheese land applies waste from its barrel cheese-making operations to sprayfields (Sprayfield #1 and Sprayfield #2) on land that is owned by Southeastern Energy.  In the past, Southeastern Cheese's land application rates have been based upon a presumed production of 6,600,000 gallons of waste per year, when they are actually producing 52,304,651 gallons of waste per year. Neel-Schaffer, Inc. *Nutrient Management and Compliance Plan for Southeastern Cheese* (October 2015) at 1.    Land application or treatment is defined as the "use of a vegetation-soil system to both renovate and serve as the ultimate receiver of industrial wastes and residues. Typically the wastes are applied to the land surface or surface zone such that chemical and biological reactions breakdown a portion of the waste, adsorption and fixation occur for other portions, and controlled

migration is allowed for certain inorganic fractions."  *See* ADEM Water Division's *Administrative and Engineering Guidelines Industrial Waste and Land Treatment Facilities* at 1.  "Excessive ponding should be avoided" and "[s]ystems should be designed for zero runoff of the applied waste." *Id.* at 4, 5.  The objective of land treatment systems is that "*all waste infiltrates*" so that "*runoff should be assumed to be zero.*" *Id.* at 15 (Emphasis added).

3.     Despite the fact that ponding is to be avoided and runoff must be zero during the use of land treatment systems, Southeastern Cheese's wastewater did not and does not infiltrate as designed and intended.  The wastewater produced by plant operations chronically ponds behind the berms at both Sprayfield #1 and Sprayfield #2, rather than infiltrating into the ground.  Both sprayfields have manually-operated discharge pipes.  The discharge from Sprayfield #1's pipe flows overland to an unnamed tributary ("the Unnamed Tributary") to a second unnamed tributary ("the Second Unnamed Tributary") to Cottonwood Creek.   The discharge from Sprayfield #2's pipe flows overland to the Second Unnamed Tributary to Cottonwood Creek.  The Unnamed Tributary, the Second Unnamed Tributary and Cottonwood Creek are all waters of the United States.  A marked Google Map of the site, which includes the location of the engineered discharge pipes, is attached as Exhibit A.

4.    Cottonwood Creek is currently on the Alabama Department of Environmental Management's ("ADEM") § 303(d) List of Impaired Waters for Organic Enrichment, Carbonaceous Biochemical Oxygen Demand, Nitrogenous Biochemical Oxygen Demand, Siltation (habitat alteration) and Nutrients -- and has been since 2006.  *See* http://adem.alabama.gov/programs/water/303d.cnt, last accessed February 16, 2016.

5.    Impaired waters are those that are in violation of the Alabama water quality criteria or "are not supporting their designated use." *See Alabama Dept. of Envtl. Mgmt. v. Alabama Rivers Alliance, Inc., and Friends of Hurricane Creek*, 14 So.3d 853, 858-59 (Ala. Civ. App. 2007).  The process waste produced by Southeastern Cheese is rich in the very substances that contribute to Cottonwood Creek's impairment.  Southeastern Cheese does not and, upon information and belief, has never had an NPDES permit to discharge to Cottonwood Creek or any of its tributaries.

## Jurisdiction and Venue

6.    This Court has subject matter jurisdiction over this case pursuant to the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365(a).  This Court also has jurisdiction by virtue of 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 2201 (declaratory relief).

7.    Venue is proper in this judicial district and in this Court under 28 U.S.C. §

1391(b) and 33 U.S.C. § 1365(c)(1) because the unpermitted discharges giving rise to Riverkeeper's claims are located and are occurring in Marengo County on land owned by Southeastern Energy, which is in the Northern Division of the United States District Court for the Southern District of Alabama.

8.      In compliance with 33 U.S.C. § 1365(b)(1)(A), on December 24, 2015, Riverkeeper provided Defendants with notice of the violations specified in this Complaint and of their intent to file suit after sixty days should these violations continue.    A copy of that notice is attached as Exhibit B.   Notice was also provided to the Administrator of the U.S. Environmental Protection Agency ("EPA"); the Regional Administrator of EPA's Region 4; the U. S. Attorney General; and ADEM.   More than sixty days have elapsed since Riverkeeper provided Defendants with notice, and the violations identified in that notice letter are continuing at this time and/or can reasonably be expected to recur in the future. Neither the EPA nor ADEM has commenced or is diligently prosecuting a civil or criminal action to redress the violations alleged herein.   *See* 33 U.S.C. § 1365(b)(1)(B).

9.      ADEM filed a limited enforcement action against Southeastern Cheese on June 5, 2015 to address two discrete discharges, one at the plant and one at Sprayfield #1. *See ADEM v. Southeastern Cheese Corporation,* Civil Action No. 2015-cv-900079.00 (Marengo County Circuit Court) (Exhibit C ("the State

action"). The first discharge, denominated as the "July 2014 Incident," occurred when "during maintenance of the Facility's treatment system, approximately 50,000 gallons of treated [industrial] wastewater had inadvertently drained to an unknown culvert which then discharged into the UT [unnamed tributary] to Cottonwood Creek." *Id.* at 2-3. The second discharge, characterized the "April 2015 Incident," was reported as a "possible" discharge from a "breach in the berm surrounding the sprayfields on the morning of April 1, 2015" at the southwest corner of Sprayfield #1. *Id.* at 3. According to Southeastern Cheese, repairs to the berm were made at that time to stop the flow and to "fortify the berm." Exhibit G, *April 8, 2015 Letter to Scott Ramsey, ADEM, from W. Christopher Waller, Jr.*

10.   At the time of this breach, construction of Sprayfield #2 had not yet been completed and Sprayfield #2 was not in use.

11.   ADEM and Southeastern Cheese entered a July 15, 2015 consent order (the Consent Order") settling the State action. *See* Exhibit D.[1] The terms of the Consent Order required Southeastern Cheese either to submit a revised nutrient management plan for the plant *or* to obtain an NPDES permit for future stormwater runoff from the plant and the land application of the wastewater. *Id.* at 4.

12.   Southeastern Cheese elected to submit a revised nutrient management plan and did so in October 2015. *See* Exhibit E, Southeastern Cheese's December 3,

---

[1] Since 2010, Riverkeeper has submitted multiple comment letters which address permitting issues and the environmental compliance failures at Southeastern Cheese.

2015 Notice of Compliance, *ADEM v. Southeastern Cheese Corporation,* Civil Action No. 2015-cv-900079.00 (Marengo County Circuit Court); *see also* Exhibit F, Southeastern Cheese's February 16, 2016 Amended Notice of Compliance, *ADEM v. Southeastern Cheese Corporation,* Civil Action No. 2015-cv-900079.00 (Marengo County Circuit Court).

13.     The Consent Order expressly states that it "is not and shall not be construed as a permit, or a modification of any existing permit, issued pursuant to the AWPCA, and nothing herein shall be construed as relieving [Southeastern Cheese] of its obligations to comply with the terms and conditions of any applicable federal or State statute, any regulations promulgated thereunder, or any permit(s) issued thereunder."   *Id.* at 9.    Moreover, Southeastern Cheese "is responsible for achieving and maintaining compliance with all applicable federal and State laws, regulations, and permits."  *Id.* at 10.

## Parties

14.     Defendants Southeastern Cheese and Southeastern Energy are incorporated in the State of Alabama.  Southeastern Cheese owns and operates a facility making barrel cheddar cheese; upon information and belief, Southeastern Energy owns the land in Marengo County, Alabama where Sprayfield #1 and Sprayfield #2 are located.  Southeastern Energy also owns and operates a plant and equipment to produce energy and fertilizer.  *See Alabama Secretary of State Business Entity*

*Details*,   http://arc-sos.state.al.us/CGI/CORPNAME.MBR/INPUT,   last   accessed February 17, 2016.  Both business entities are incorporated and managed by the same individual.  *Id.*

15.    Plaintiff Riverkeeper is an Alabama nonprofit membership corporation with over 2,000 members that is dedicated to protecting and restoring the Black Warrior River and its tributaries.  Cottonwood Creek is a tributary of Big Prairie Creek, a tributary of the Black Warrior River.   Riverkeeper actively supports effective implementation and enforcement of environmental laws, including the Clean Water Act, on behalf and for the benefit of its members.

16.    Certain members of Riverkeeper live, work or own property in Uniontown, Alabama.  Several unnamed tributaries to Cottonwood Creek begin in the city of Uniontown, before flowing past the Southeastern Cheese wastewater sprayfields, the Uniontown Lagoon (the city's municipal wastewater treatment plant), and past Sprayfields #1 and #2 before emptying into Cottonwood Creek.   Cottonwood Creek then flows for approximately ten miles before it reaches its confluence with Big Prairie Creek just north of County Road 12 near Prairieville, Alabama.

17.    Uniontown residents and Riverkeeper members have long complained about the operations of Southeastern Cheese, specifically problems with the spraying of wastewater, the ponding of waste and illegal discharges from the sprayfields where the plant disposes of its wastewater.

18.     Riverkeeper members notice an increase in the strong smell associated with the cheese waste when the wastewater is being sprayed, ponding or being discharged into Cottonwood Creek.  They are harmed aesthetically by the polluted runoff into area streams and the terrible smell of the waste that builds up.  They are especially concerned about what the wastewater is doing to Cottonwood Creek. They are upset about the implications of the waste for their community, their quality of life, their health, their livestock, and the environment.  The Riverkeeper members who own land and pasture cattle near the sprayfields worry about the impact of wastewater runoff on the creek, their property and their cattle. Flies, universally acknowledged as carriers of disease, are attracted to the waste and multiply rapidly.  The flies are not just a nuisance, but a threat to public health. These Riverkeeper members are all afraid to use and enjoy Cottonwood Creek in its current degraded condition.  When the wastewater is applied, builds up behind the berms or when Southeastern Cheese is discharging, these members do not want to go outside.  The smell of the wastewater is overpowering and on some days prevents them from being outside or being able to carry out daily activities. The runoff has diminished aquatic life in Cottonwood Creek, making it less suitable for fishing, hunting, agriculture, recreation, wildlife and observing nature.  These members would like to see Cottonwood Creek cleaned up so that they and other members of the community do not have to worry about their safety or health.  They

would like to see Cottonwood Creek flowing clean and clear.  They would like to see aquatic life thrive in the creek again.  Having to live amidst the pollution that the sprayfields contribute to the community is degrading for these members.  The sprayfield pollution affects their environmental, recreational and aesthetic interests in having a clean and wholesome community to live in, to recreate in and to enjoy.

19.    Cottonwood Creek empties directly into Big Prairie Creek downstream. Other members of Riverkeeper use and value Big Prairie Creek for recreation, including but not limited to canoeing, kayaking, boating, fishing, swimming, wildlife observation, nature and landscape observation and for aesthetic enjoyment. They also own property on Big Prairie Creek.  These members worry about how the impacts of the Southeastern Cheese runoff affect Cottonwood Creek and the water quality of Big Prairie Creek.  The violations alleged herein have lessened their recreational and aesthetic enjoyment of Big Prairie Creek.  They would use and enjoy Big Prairie Creek more if the violations alleged herein are abated.

20.    These and other Riverkeeper members are being adversely affected and are suffering injury in fact because of the Defendants' intentional and illegal discharges of Southeastern Cheese's nutrient and bacteria-laden, noxious cheese wastewater from Sprayfield #1 and Sprayfield #2. Specifically, the Southeastern Cheese sprayfields discharge polluted wastewater and/or wastewater comingled with stormwater from pipes into the unnamed tributaries just upstream of

Cottonwood Creek, which flows into Big Prairie Creek.  As the wastewater builds up behind earthen berms constructed at lower elevations at both sprayfields, it is manually released through pipes and flows overland into unnamed tributaries to Cottonwood Creek.  The wastewater emits nauseating odors and pollutes unnamed tributaries to Cottonwood Creek and Cottonwood Creek with nutrients, sodium, carbonaceous biochemical oxygen demand, bacteria and sediment, which contribute to the stream's degraded condition and its continued placement on Alabama's 303(d) List.

21.    A declaratory judgment and an injunction requiring the Defendants to immediately stop the intentional and unpermitted discharge of wastewater at Sprayfield # 1 and Sprayfield # 2 will redress the injury being suffered by Riverkeeper and its members.

22.    The interests of Riverkeeper members described above have been, are being, and, unless the relief prayed for herein is granted, will continue to be adversely affected and irreparably injured by the Defendants' violation of the Clean Water Act.

## History and Background

23.    Prior to 2002, Southeastern Cheese land applied the industrial waste from its cheese-making operations.   CFM Group, *June 3, 2011 Process Waterwater*

*Treatment System Investigation Report for Southeastern Cheese, LLC* (Alabama EMC Docket No. 10-06) at 2.[2]

24.     However, in "late 2003 or early 2004 when routine inspections of nearby waterways by ADEM found evidence of area stream impairments, particularly on Cottonwood Creek which has a tributary flowing through the land application area," Southeastern Cheese ceased this practice "in light of this finding." *Id.* at 8. Shortly thereafter Cottonwood Creek was placed on Alabama's § 303(d) List.

25.     Southeastern Cheese then built a treatment system to process their industrial waste for discharge through the local publicly-owned wastewater treatment facility, the Uniontown Lagoon.

26.     On August 30, 2004, ADEM issued Southestern Cheese state indirect discharge (SID) permit IU-39-53-00113, which, subject to certain terms and conditions, authorized the discharge of industrial wastes assoicated with dairy production operations, to the Uniontown Lagoon.   That permit was reissued effective November 9, 2009.

27.      While discharging to the Uniontown Lagoon, Southeastern Cheese was on ADEM's list of state indirect dischargers in significant non-compliance of permit conditions and limitations for the calendar years of 2012, 2011, 2010, 2009, 2008

---

[2] The factual information for the Complaint was taken entirely from documents in Southeastern Cheese's ADEM regulatory file, IU-39-53-00113, http://app.adem.alabama.gov/eFile/ last accessed February 17, 2016.

and 2006.  Southeastern Cheese's chronic failure to meet pretreatment standards for the waste it discharged to the Uniontown Lagoon contributed to the city's own longstanding compliance failures at its wastewater lagoon, which also burdened Cottonwood Creek because it routinely overflowed into the Second Unnamed Tributary to Cottonwood Creek referenced herein.

28.  With Southeastern Cheese chronically unable to meet pretreatment standards for discharging through the municipal wastewater plant, Southeastern Cheese ceased discharging to the Uniontown Lagoon on April 17, 2012.

29.  Despite Southeastern Cheese's documented inability to adequately pretreat its wastewater, despite the prior problems noted with Southeastern Cheese's land application of wastewater and how it contributed to the impairment of Cottonwood Creek recognized in 2002, Southeastern Cheese once again began land applying its industrial waste effective April 26, 2012 ---- under the same inadequate 2002 plan that was cited in connection with Cottonwood Creek's impairment.  *See* Neel-Schaffer, Inc. *Nutrient Management and Compliance Plan for Southeastern Cheese* (October 2015) at 1.

30.  Because of identified "design flaws" and "stormwater runoff" from Sprayfield #1, Southeastern Cheese overhauled that sprayfield and began construction of "a new additional sprayfield," Sprayfield #2 in April 2015.  *See*

<u>Exhibit G</u>   *April 8, 2015 Letter to Scott Ramsey, ADEM, from W. Christopher Waller, Jr.*

## Legal Framework

31.     The Clean Water Act was enacted by Congress in 1972 to "restore and maintain the chemical, physical, and biological integrity of the nation's waters." 33 U.S.C. § 1251(a).  The Act further declared that "it is the national goal that the discharge of pollutants into the navigable waters be eliminated . . . ." 33 U.S.C. § 1251(a)(1).

32.     As one means of achieving that objective, the CWA prohibits "the discharge of any pollutant by any person" unless it meets the National Pollutant Discharge Elimination System ("NPDES") permitting requirements set forth in section 402 of the Act, 33 U.S.C. § 1342. *See* 33 U.S.C. § 1311. The terms of NPDES permits are calculated to reduce pollution to levels that are not harmful to the waters into which they flow.

33.     The term "discharge of a pollutant" means any addition of any pollutant to navigable waters of the United States from any point source. 33 U.S.C. § 1362(12).

34.     "Navigable waters" are the waters of the United States, including the territorial seas. 33 U.S.C. § 1362(7).

35.     The term "pollutant" includes "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological

materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).   The industrial waste discharged by Southeastern Cheese from its sprayfields is harmful and includes, but not limited to, color, *e. coli* bacteria, total suspended solids, total dissolved solids, sodium, carbonaceous biochemical oxygen demand, and nutrients such as phosphorus, nitrate-nitrite, total kjeldahl nitrogen, and ammonia.

36.    The CWA defines a "point source" as "any discernable, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, [or] container . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

37.    Under section 505(a)(1) of the Clean Water Act, any citizen may commence a civil action for injunctive or declaratory relief against "any person"  alleged to be in violation of NPDES requirements and/or engaging in the unpermitted discharge of a pollutant. 33 U.S.C. § 1365(a)(1); *see also* 33 U.S.C. § 1362(5) (the term "person" includes a corporation).

38.    This Court has jurisdiction to order the Defendants to comply with the Clean Water Act and to assess civil penalties.  33 U.S.C. § 1319(d), 33 U.S.C. 1365(a).

39.    Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. §

3701, the Court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009.  *See* 40 C.F.R. § 19.4.

40.    Additionally, the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing party or substantially prevailing party, whenever the court determines that such award is appropriate."  33 U.S.C. § 1365(d).

## Count I
## Clean Water Act
## Intentional and Unpermitted Discharges from Sprayfield #1

41.    Paragraphs 1 through 40 are re-alleged and incorporated by reference.

42.    Southeastern Cheese intentionally discharges wastewater into the Unnamed Tributary to the Second Unnamed Tributary to Cottonwood Creek through an unpermitted point source that is part of its land treatment system, namely an engineered pipe and sluice gate system at Sprayfield #1 that is manually controlled by Southeastern Cheese and/or Southeastern Energy.

43.    This engineered pipe discharges wastewater that flows overland into an Unnamed Tributary to the Second Unnamed Tributary to Cottonwood Creek.  Both of these tributaries significantly affect the chemical, physical, and biological integrity of Cottonwood Creek.

44.    On November 1, 3, and 4 as well as December 17, 18, 19, 20, 21, and 22, 2015 Southeastern Cheese intentionally discharged wastewater from its engineered

pipe at Sprayfield #1 that flowed overland into an Unnamed Tributary to the Second Unnamed Tributary to Cottonwood Creek, and ultimately to Cottonwood Creek.

45.   This pipe is a point source under the Clean Water Act.

46.   Cottonwood Creek flows into Big Prairie Creek, a tributary of the Black Warrior River.

47.   The Unnamed Tributary, the Second Unnamed Tributary, Cottonwood Creek, Big Prairie Creek and the Black Warrior River are all "waters of the United States."

48.   This industrial wastewater, alone or comingled with stormwater, in addition to being defined as a pollutant under 33 U.S.C. § 1362(6), is also adding at least the following pollutants to Cottonwood Creek: color, *e. coli*, total suspended solids, total dissolved solids, sodium, carbonaceous biochemical oxygen demand, and nutrients such as phosphorus, nitrate-nitrite, total kjeldahl nitrogen, and ammonia.

49.   Sample results of the discharge at Sprayfield #1 on November 9 and on December 22 show concentrations of total suspended solids, total dissolved solids, sodium, ammonia, phosphorous, nitrate-nitrite and total kjeldahl nitrogen, as well as carbonaceous biochemical oxygen demand.  Sample test results on November 9 also show the presence of *e. coli* bacteria in the discharge.

50.     The sample results for December 22 also show that the Second Unnamed Tributary to Cottonwood Creek downstream of Sprayfield #1 and Sprayfield #2 registered higher concentrations of total suspended solids, total dissolved solids, sodium, ammonia, phosphorous, nitrate-nitrite and total kjeldahl nitrogen, as well as carbonaceous biochemical oxygen demand, when compared with sample results upstream of the sprayfield discharge.

51.     Southeastern Cheese and/or Southeastern Energy is aware of these discharges, but has failed and continues to fail to obtain an NPDES permit to cover these discharges or otherwise prevent these illegal discharges into the Unnamed Tributary to the Second Unnamed Tributary to Cottonwood Creek.

52.     Southeastern Cheese and/or Southeastern Energy is aware of these discharges, because they are caused by the manual raising of the sluice gate at Sprayfield #1's engineered pipe.

53.     The Consent Order in the State action, which was executed "to resolve the issues alleged by ADEM in the Complaint," *see* <u>Exhibit D</u> at 3, entirely fails to address the intentional unpermitted discharges and violations alleged herein.

54.     The ADEM Complaint and Consent Order address discrete, one-time events that arose out of an "inadvertent" maintenance failure at the plant and a "design flaw" in the construction of Sprayfield #1.  Neither the ADEM Complaint nor the

Consent Order address, remedy or stop Southeastern Cheese's ongoing, intentional discharge of pollutants from the engineered pipe at Sprayfield #1.

55.     Thus, the violations alleged herein are not substantially the same as those covered by the Consent Order and are not subject to its jurisdiction.

56.     Southeastern Cheese is discharging wastewater without a permit in violation of the Clean Water Act, 33 U.S.C. § 1311.   These violations are especially egregious given that Cottonwood Creek is on the state's § 303(d) List of impaired waters and that Southeastern Cheese is at least partly responsible for the placement of the creek on the list.

57.     Based on the foregoing facts, Riverkeeper requests a declaration that Southeastern Cheese has violated and is violating the Clean Water Act, 33 U.S.C. §§ 1311 and 1342.

58.     By committing the acts and omissions alleged above, Southeastern Cheese is subject to an assessment of civil penalties under the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365.

## Count II
## Clean Water Act
## Intentional Unpermitted Discharges from Sprayfield #2

59.     Paragraphs 1 through 58 are re-alleged and incorporated by reference.

60.     Southeastern Cheese is discharging wastewater into the Second Unnamed Tributary to Cottonwood Creek through an unpermitted point source that is part of

its land treatment system, namely an engineered pipe and sluice gate system at Sprayfield #2 that is manually controlled by Southeastern Cheese and/or Southeastern Energy.

61.    This engineered pipe discharges wastewater that flows overland into the Second Unnamed Tributary to Cottonwood Creek.  This tributary significantly affects the chemical, physical, and biological integrity of Cottonwood Creek.

62.    On November 9 and December 14, 17, and 18, 2015 Southeastern Cheese discharged wastewater from its engineered pipe at Sprayfield # 2 that flowed overland into the Second Unnamed Tributary and ultimately to Cottonwood Creek.

63.    This pipe is a point source under the Clean Water Act.

64.    Cottonwood Creek flows into Big Prairie Creek, a tributary of the Black Warrior River.

65.    The Second Unnamed Tributary, Cottonwood Creek, Big Prairie Creek and the Black Warrior River are all "waters of the United States."

66.    This industrial wastewater, in addition to being defined as a pollutant under 33 U.S.C. § 1362(6), is also adding at least the following pollutants to Cottonwood Creek: color, *e. coli* bacteria, total suspended solids, total dissolved solids, sodium, carbonaceous biochemical oxygen demand, and nutrients such as phosphorus, nitrate-nitrite, total kjeldahl nitrogen, and ammonia.

67.    Sample results of the discharge at Sprayfield #2 on November 9 show concentrations of total suspended solids, total dissolved solids, ammonia, phosphorous, nitrate-nitrite and total kjeldahl nitrogen, as well as carbonaceous biochemical oxygen demand.   Sample results on November 9 also show the presence of *e. coli* bacteria in the discharge.

68.    Southeastern Cheese and/or Southeastern Energy is aware of these discharges but has failed and continues to fail to obtain an NPDES permit to cover these discharges or otherwise prevent these illegal discharges into Cottonwood Creek.

69.    Southeastern Cheese and/or Southeastern Energy is aware of these discharges, because they are caused by the manual raising of the sluice gate at Sprayfield #2's engineered pipe.

70.    The Consent Order in the State action, which was executed "to resolve the issues alleged by ADEM in the Complaint," *see* Exhibit D at 3, fails to address the intentional, unpermitted discharges and violations alleged herein.

71.    The ADEM Complaint and Consent Order address discrete, one-time events that arose out of an "inadvertent" maintenance failure at the plant and a "design flaw" in the construction of Sprayfield #1.   Neither the State action nor the Consent Order address, remedy or stop Southeastern Cheese's ongoing, intentional discharge of pollutants from the engineered pipe at Sprayfield #2.

72.     Thus, the violations alleged herein are not "substantially the same" as those covered by the Consent Decree and are not subject to its jurisdiction.  In fact, there were no allegations about Sprayfield #2 in the State action, as it was under construction to address in part the "design flaw" that precipitated the April 2015 Incident at Sprayfield #1.

73.     Southeastern Cheese is discharging wastewater without a permit in violation of the Clean Water Act, 33 U.S.C. § 1311.   These violations are especially egregious given that Cottonwood Creek is on the state's § 303(d) List of impaired waters and that Southeastern Cheese is at least partly responsible for its placement on the list.

74.     Based on the foregoing facts, Riverkeeper requests a declaration that Southeastern Cheese has violated and is violating the Clean Water Act, 33 U.S.C. §§ 1311 and 1342.

75.     By committing the acts and omissions alleged above, Southeastern Cheese is subject to an assessment of civil penalties under the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365.

**Count III**
**Injunctive Relief**

76.     Paragraphs 1 through 75 are re-alleged and incorporated by reference.

77.     Riverkeeper has no adequate remedy at law for Southeastern Cheese and/or Southeastern Energy's ongoing unpermitted discharges of wastewater.

78.   The continuous and unlawful discharges of wastewater by Southeastern Cheese and/or Southeastern Energy are causing irreparable environmental degradation and adverse harm to Riverkeeper, the residents of Uniontown, downstream property owners and users of Cottonwood Creek and Big Prairie Creek.

79.   Southeastern Cheese will continue to violate the Clean Water Act, 33 U.S.C. §§ 1311 and 1342, in this manner, unless enjoined by the Court.

80.   Therefore, Riverkeeper seeks an injunction pursuant to the Clean Water Act, 33 U.S.C. § 1365(a), requiring that Southeastern Cheese halt the intentional, unpermitted discharge of wastewater from Sprayfield #1 and Sprayfield #2 to unnamed tributaries to Cottonwood Creek.

**Count IV**
**ADEM Consent Order Fails to "Diligently Prosecute"**
**Violations Alleged by Riverkeeper**

81.   Paragraphs 1 through 80 are re-alleged and incorporated by reference.

82.   Because the State action and Consent Order do not address Southeastern Cheese's intentional, unpermitted discharges into tributaries to Cottonwood Creek, the "diligent prosecution bar" provided by 33 U.S.C. § 1365(b)(1)(B) does not apply.

83.    However, to the extent that the Defendants claim that the State action and Consent Order constitute diligent prosecution that should bar Riverkeeper's claims, they do not.

84.    Riverkeeper's claims are not substantially the same as those addressed by the State action.

85.    The State action addressed two discrete events which were addressed by the assessment of penalties for those events and the remedial requirement of either an updated Nutrient Management Plan or an application for an NPDES permit.  The updated Nutrient Management Plan that Southeastern Cheese chose to implement addresses the underlying reasons for the April 2015 breach of the berm at Sprayfield #1 --- and not the intentional Clean Water Act violations alleged herein by Riverkeeper.  The State action and Consent Order do not address the violations at Sprayfield #2 at all because it was not a part of the enforcement action.  It was constructed as part of a strategy to address the issues that precipitated the State action and Consent Order.

86.    The Consent Order was entered on July 15, 2015, well before the violations alleged herein occurred.

87.    Southeastern Cheese's chosen remedial action under the Consent Order, the October 2015 Nutrient Management Plan, does not address and will not abate the intentional violations alleged herein.

88.    The October 2015 Nutrient Management Plan was filed in the State action December 3, 2015.   While intentionally discharging wastewater from its sprayfields, Southeastern Cheese stated that it was in "full compliance" with the Consent Order and requested that the court enter a stipulation of dismissal in 45 days.   *See* <u>Exhibit E</u>, Southeastern Cheese's December 3, 2015 Notice of Compliance at 2, *ADEM v. Southeastern Cheese Corporation,* Civil Action No. 2015-cv-900079.00 (Marengo County Circuit Court).   ADEM filed no response and took no action.

89.    After Riverkeeper sent its Notice of Intent to Sue December 24, 2015, Southeastern Cheese filed an Amended Notice of Compliance in the State action. *See* <u>Exhibit F</u>, Southeastern Cheese's February 16, 2016 Amended Notice of Compliance, *ADEM v. Southeastern Cheese Corporation,* Civil Action No. 2015-cv-900079.00 (Marengo County Circuit Court).   ADEM filed no response and took no action.

90.    Some two months after representing it was in full compliance with the Consent Order, Southeastern Cheese reversed course to state that the Nutrient Management Plan "may very well be amended or modified subject to ADEM's review and evaluation."   *Id.* at  2.

91.    However, ADEM has taken no action with respect to the violations alleged in Riverkeeper's Notice of Intent to Sue.  ADEM has pursued no penalties for the

intentional, unpermitted discharges nor required Southeastern Cheese to undertake any specific actions to end the unpermitted discharges at Sprayfield #1 or Sprayfield #2.  Moreover, there has been no admission of liability by Southeastern Cheese for the discharges alleged herein.

92.    Instead, Southeastern Cheese merely states that  "due to unexpected storm water runoff volumes during flash-flood type rains, [it] is now considering a modification of the [Nutrient Management Plan] and/or the option of applying for an NPDES permit as provided in VIII(A)(2) [of the Consent Order], and will make those decisions in a timely manner."  *Id*. at 2.  There is no mention of or admission to the intentional violations alleged herein.

93.    Thus, there has been *no* enforcement by ADEM for the violations noticed by Riverkeeper, much less the diligent enforcement required to raise the bar of 33 U.S.C. § 1365(b)(1)(B).

94.    Southeastern Cheese has merely indicated options it may choose to pursue in the future with regard to the Nutrient Management Plan and/or obtaining an NPDES permit.  That is far different from enforcement, by which ADEM would *require* Southeastern Cheese stop without delay the unpermitted discharges to unnamed tributaries to Cottonwood Creek, immediately obtain an NPDES permit or perhaps assess penalties that punish Southeastern Cheese for these serious violations of the Clean Water Act.

95.    Because Southeastern Cheese's voluntary commitment to explore possible options in the future does not constitute enforcement in the present, Southeastern Cheese cannot successfully claim that ADEM is diligently prosecuting an enforcement action within the meaning of 33 U.S.C. § 1365(b)(1)(B) for the violations alleged herein.

## Prayer for Relief

96.    WHEREFORE, Riverkeeper respectfully requests this Court to enter the following relief:

(a)    a declaratory judgment that Southeastern Cheese's discharges of industrial wastewater into waters of the U.S. are violations of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342;

(b)    an injunction pursuant to the Clean Water Act, 33 U.S.C. § 1365(a), requiring that Southeastern Cheese immediately halt the unpermitted discharge of wastewater to unnamed tributaries to Cottonwood Creek;

(c)    an order requiring that Southeastern Cheese pay appropriate civil penalties up to $37,500 per day for each Clean Water Act violation;

(d)    an award of litigation costs, including reasonable attorney and expert witness fees, as authorized by the Clean Water Act, 33 U.S.C. § 1365(d); and

(e)     such other and further relief as the Court deems just and appropriate to effectuate a complete resolution of the legal disputes between Plaintiff and Defendants.

Respectfully submitted on this 25th day of February 2016.

Eva L. Dillard (ASB-4118-A59E)
Attorney for Plaintiff
Black Warrior Riverkeeper, Inc.
710 37th Street South
Birmingham, AL 35222-3206
(205) 458-0095 Office
(205) 458-0094 Facsimile
edillard@blackwarriorriver.org