IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BLACK WARRIOR RIVERKEEPER, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 16-0083-KD-B |
| | ) | |
| SOUTHEASTERN CHEESE CORPORATION, | ) | |
| *et al.*, | ) | |
|     Defendants. | | |

**ORDER**

This matter is before the Court on Defendants Southeastern Cheese Corporation and Southeastern Energy and Fertilizer, LLC (hereinafter "SCC")'s Motion to Dismiss (Doc. 7), which has been converted to a motion for summary judgment (Doc. 20), Plaintiff Black Warrior Riverkeeper, Inc. ("Riverkeeper")'s Response to SCC's Motion to Dismiss (Doc. 12), SCC's Reply (Doc. 14), Riverkeeper's Supplemental Brief (Doc. 17), SCC's Supplemental Reply Brief (Doc. 18), and Riverkeeper's Brief in Opposition (Doc. 23). After consideration of all briefs and evidence submitted, testimony and arguments presented at the evidentiary hearing conducted by the Court on December 7, 2016, and the relevant law, the Court finds that SCC's Motion for Summary Judgment is **GRANTED** for the reasons set forth herein. Accordingly, SCC's motion for leave to file a reply (Doc. 25) is **MOOT**.

**I.      Introduction/Proceedings**

On June 5, 2015, the Alabama Department of Environmental Management ("ADEM") filed a complaint against SCC in the Circuit Court of Marengo County, Alabama for alleged violations of the Alabama Water Pollution Control Act ("AWPCA") and ADEM regulations arising out of two separate occurrences, including

an illegal discharge into the unnamed tributary ("UT") to Cottonwood Creek on April 1, 2015. (Doc. 1-1 at pp. 10-14). At the time, SCC did not have a National Pollutant Discharge Elimination System ("NPDES") permit to discharge into the UT to Cottonwood Creek. (Doc. 1-1 at p. 13). ADEM sought injunctive relief and a civil penalty. (Doc. 1-1 at pp. 13-14).

On August 6, 2015, at the request of ADEM and SCC, the Circuit Court of Marengo County entered a Consent Decree. (Doc. 7-1 at pp. 5-25). Pursuant to the Consent Decree, SCC has two choices to address its violations of the Clean Water Act ("CWA"): 1) SCC can submit a revised Nutrient Management Plan ("NMP") to ADEM, along with an Engineering Report containing a schedule for implementation of the NMP and details describing how SCC will implement its NMP to ensure that SCC's wastewater will be applied in a beneficial manner and not discharged into the UT or, 2) SCC can submit to ADEM an application to discharge a NPDES permit for stormwater runoff from the spray fields. (Doc. 7-1 at p. 10).

The Consent Decree further provides that after submittal to and acceptance by ADEM of the required NMP or application for NPDES permit, SCC must comply with the NMP or the NPDES permit. (Doc. 1-1 at p. 11). The Consent Decree sets forth civil penalties that were paid by SCC, including $30,000 to the Alabama Clean Water Partnership and $20,000 to ADEM, for violations through June 2015. (Doc. 7-1 at pp. 11-12). The Consent Decree also contains a provision for per day penalties to be paid by SCC for future failure to comply with requirements of the Decree, up to $12,000. (Doc. 7-1 at pp. 12-13). The Circuit Court of Marengo County retained jurisdiction for the purpose of implementing and enforcing the terms and conditions of the Consent Decree

2

and for the purpose of adjudicating any dispute that might arise between the parties under the Consent Decree. (Doc. 7-1 at p. 15). The case remains pending in the Circuit Court of Marengo County. (Doc. 21 at p. 57). Riverkeeper has not intervened in the Marengo County case.

On December 24, 2015, Riverkeeper provided SCC with notice of alleged violations of the CWA and its intent to file suit after 60 days if the alleged violations continued. (Doc. 1 at p. 5). Riverkeeper alleged that SCC violated the CWA by intentionally discharging wastewater into the UTS of cottonwood creek from its engineered pipe at Sprayfield # 1 on November 1, 3, and 4 and on December 17 through December 22, 2015. (Doc. 1 at pp. 16-17). Riverkeeper also alleged that SCC violated the CWA by discharging wastewater from its engineered pipe at Sprayfield #2 on November 9 and December 14, 17, and 18, 2015. (Doc. 1 at p. 20).[1] On February 25, 2016, Plaintiff filed its complaint against Defendants alleging that SCC violated the CWA by illegally discharging industrial wastewater into UTs of Cottonwood Creek and, ultimately, into Cottonwood Creek (Doc. 1 at p. 1). Riverkeeper seeks injunctive relief, assessment of civil penalties, and an award of litigation fees. (Doc. 1).

On March 22, 2016, SCC filed a motion to dismiss Riverkeeper's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. (Doc. 7). The primary basis for SCC's motion is its argument that ADEM is currently diligently prosecuting it for unpermitted discharges from its sprayfields, which

---

[1] Although ADEM was made aware of the dates of these alleged discharges, no data was provided to ADEM concerning the amount of the discharges, the exact source of the discharge, or the nature of the discharges, that is, whether these discharges were only storm water runoff or whether these discharges contained other pollutants. (Doc. 21 at p. 52).

3

are the same complaints made in Riverkeeper's action, and Riverkeeper is, therefore, precluded from maintaining a citizen suit. (Doc. 7 at pp. 1-3).

On December 7, 2016, the Court held an evidentiary hearing regarding subject matter jurisdiction. On December 15, 2016, the Court converted the motion to dismiss (Doc. 7) to a motion for summary judgment. (*See* Doc. 20).

**II.** **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(c) provides as follows:

> ***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. Rule 56(c).

Defendant, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. In assessing whether the nonmoving party has met its burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992).

The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004). Likewise, conclusory allegations are insufficient to create a genuine issue of material fact and, therefore, do not suffice to defeat a motion for summary judgment. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997)("conclusory assertions…, in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"). "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law." *AGSouth Genetics, LLC v. Cunningham*, No. CA 09-745-C, 2011 WL 1833016, at *2 (S.D. Ala. May 13, 2011).

**III.    Facts**

SCC owns and operates a barrel cheese facility in Marengo County and Perry County, which processes whole milk into cheddar cheese. (Doc. 7 at p. 4). Sweet whey, a by-product of this process, has a beneficial use as a fertilizer. (*Id.*). SCC sprays its whey onto two of its hayfields. (Doc. 7 at pp. 4-5). SCC allegedly had several occurrences of unpermitted discharges of wastewater from these fields between July of 2014 and December of 2015. (Doc. 1; Doc. 1-1 at pp. 10-14).

Glenda Dean ("Dean"), the chief of ADEM's water division who is responsible for management of the NPDES program with regard to surface water discharges, testified at an evidentiary hearing on December 7, 2016. (Doc. 21 at p. 6). Dean testified regarding the alleged violations that led to ADEM filing suit in June of 2015. Specifically, in July 2014, SCC reported an unpermitted discharge of wastewater from a pond. (Doc. 21 at p. 8). Because of this unpermitted discharge of wastewater from the site, SCC constructed a berm to have the ability to collect runoff in the event of a large rain event and then reloop it onto the field at a later time. (Doc. 21 at p. 9). On April 1, 2015, SCC notified ADEM of an event that occurred at its spray field (Sprayfield #1) when storm water runoff from the southwest corner of its existing spray field potentially entered into an UT to Cottonwood Creek due to a large rain and apparent design flaws in Sprayfield #1. (Doc. 1-1 at p. 35). Efforts were made that day to fortify the berm in the southwest corner of the spray field, and SCC hired an engineering firm to perform a site inspection and make recommendations to protect the watershed. (Doc. 1-1 at p. 35). ADEM inspectors went to

the facility after the discharge was reported and observed seepage from the berm. (Doc. 21 at p. 9). On April 8, 2015, SCC notified ADEM that it had constructed a large dry storm water hole with no permanent water and placed a drainpipe at its lowest point, which would remain open during periods of rain and closed when it was not raining. (Doc. 1-1 at p. 36). SCC also notified ADEM that it was planning an overhaul to Sprayfield #1 and was in the process of constructing an additional spray field (Sprayfield #2), with a system designed to correct the deficiencies and prevent any future occurrences. (*Id.*).

Because of these two unpermitted discharges, which were allegedly in violation of the AWPCA, ADEM filed a complaint against SCC on June 5, 2015 seeking an order requiring SCC to take action to ensure that similar violations would not recur in the future and seeking the assessment of a civil penalty. (Doc. 1-1 at pp. 10-14). Two months after ADEM filed its complaint, ADEM and SCC came to an agreement to resolve the suit, and the Circuit Court of Marengo County entered the Consent Decree described above on August 6, 2015. (Doc. 7-1 at pp. 5-25).   The ultimate purpose of the Consent Decree is the cessation of unpermitted discharges of wastewater runoff from the land application site (the sprayfields) at SCC. Specifically, the Consent Decree states:

> It is the express purpose of the Parties entering into this Consent Decree to resolve the issues alleged by ADEM in the Complaint. In light of this objective, SCC agrees, inter alia, to cause the expeditious implementation of the remedial measures as herein set forth and, in accordance with schedules herein approved by the Court, to take all appropriate steps necessary to comply with the AWPCA and applicable ADEM rules, and to do all lawful acts necessary to effectuate the provisions of this Consent Decree.

(Consent Decree, Doc. 7-1 at 8).

Currently, SCC is working on an acceptable revised NMP plan. (Doc. 21 at pp. 14-15). SCC submitted an initial NMP plan to ADEM, but it was not acceptable. (Doc. 21 at p. 14). Based on ADEM's discussions and comments about its original plan, SCC retained experts from Auburn University to assist SCC by conducting research at the site to obtain the information necessary to formulate an acceptable NMP plan. (Doc. 21 at p. 15). Those experts estimate that the research will be completed in a two year time frame.  (*Id.*). Dean testified that the two year period is not unusual or unacceptable in light of the fact that the soil in this area is challenging, and the whey has beneficial nutrients in it and characteristics that make it potentially favorable to mend soils like those present at SCC. (Doc. 21 at pp. 47-48). If an acceptable plan for application of the whey without unpermitted discharges is not possible, SCC will be required to submit a NPDES permit application. (Doc. 21 at p. 15).

At the time the parties entered into the Consent Decree, ADEM anticipated that there would potentially be runoffs from the site for a period of time while SCC was taking corrective action. (Doc. 21 at pp. 12, 51). Potential runoffs or discharges are not unusual while a company or municipality is taking corrective action. (Doc. 21 at p. 51).

Since August of 2015, when the Consent Decree was entered in state court, ADEM has continued to pursue cessation of unpermitted discharges at SCC and compliance with the Consent Decree. ADEM inspectors have inspected the site on at least 3 occasions. (Doc. 21 at pp. 44-46). During its January 25, 2016 inspection, ADEM observed that two stormwater ponds with discharge pipes had been installed at SCC. (Doc. 7-4 at p. 1). ADEM notified SCC that use of the pipes was not mentioned in the initial NMP and that SCC should modify the NMP to address this issue. (*Id.*). ADEM

8

also reminded SCC that a valid NPDES permit is required to discharge pollutants to a state water. (*Id*.). The most recent site inspection was performed by ADEM during the week of November 28, 2016, after recent rains in the area. The inspectors observed no discharges. (Doc. 21 at pp. 17-18). Since the Consent Decree was entered, ADEM has not observed any discharges from the pipes on any of their inspections. (Doc. 21 at p. 45). The inspectors have only seen some minor seepage from the gate valves not sealing properly. (*Id.*).

Also, since entry of the Consent Decree, SCC and ADEM have had 2-3 meetings on-site and others at the Department office, as well as numerous telephone calls and correspondence, concerning revision of the existing NMP to eliminate any unpermitted discharges. (Doc. 21 at pp. 46-47). ADEM will be receiving periodic written progress reports from the experts at Auburn and will be conducting conference calls with them to monitor progress. (Doc. 21 at p.47). In addition, SCC has changed the type of application mechanism that they use to apply the material. (Doc. 21 at p. 18).

ADEM's action remains pending on the docket of Judge Eddie Hardaway of the Circuit Court of Marengo County, Alabama. (Doc. 21 at p. 57). Pursuant to the Consent Decree, Judge Hardaway retained jurisdiction to adjudicate any disputes that arise under the decree, to enforce the terms and conditions of the decree, to approve modifications to the decree, and to oversee finalization of the decree. (Doc. 21 at pp. 56-57; Doc. 7-1 at pp. 15, 19-21).

Riverkeeper's lawsuit is based on allegations that SCC improperly discharged wastewater through the drainpipes during several occasions in November and December of 2015. (Doc. 1). In its opposition brief, Riverkeeper states that since the Consent

Decree was entered, it has "monitored the site and sampled the intentional discharges from the sprayfield pipes." (Doc. 23 at 5).

Following samplings done in November and December 2015, Riverkeeper determined that contents of SCC's discharges were high in sodium, various nutrients, and ammonia. (Doc. 23 at 5-6). In February 2016, Riverkeeper obtained photographs and video of additional discharge from Sprayfield #1. (See Doc. 23 at 6, n.1). Riverkeeper has also submitted aerial photographs, taken in November 2016, showing waste ponded and pooled at Sprayfields #1 and 2, respectively. (Doc. 23 at 6).

## IV.   Analysis

As the Court noted in its Order converting SCC's motion to dismiss to a motion for summary judgment (Doc. 20), the Third, Fifth, and Seventh Circuit Courts of Appeal have held that the diligent prosecution bar is not a jurisdictional limitation, but a "claim-processing rule." *See Group Against Smog and Pollution v. Shenango, Inc.*, 810 F.3d 116, 122-23 (3rd Cir. 2016) (interpreting the Clean Air Act); *La. Envtl. Action Network v. City of Baton Rouge*, 677 F.3d 737, 745-49 (5th Cir. 2012) (interpreting the CWA); *Adkins v. VIM Recycling, Inc.,* 644 F.3d 483, 491-92 (7th Cir. 2011)(interpreting the Resource Conservation and Recovery Act).[2] Following the reasoning of those decisions, this Court held that Riverkeeper's action is not due to be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The issue now presented is whether this case is due to be dismissed, as a matter of law, because Riverkeeper's action is barred by the diligent prosecution provision contained in the Clean Water Act.

In 1972, Congress enacted the Clean Water Act ("CWA") to improve the cleanliness and safety of the Nation's waters. 33 U.S.C. § 1251, *et seq.* Under § 505(a) of

---

[2] The Eleventh Circuit has not spoken on this issue.

the CWA, a citizen may bring suit to enforce its provisions. 33 U.S.C. § 1365, *et seq.* The CWA provides for a 60-day notice period prior to the institution of a citizen suit to give the violator an opportunity to bring itself into compliance with the CWA. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 174-75 (2000). ("…[C]itizens lack statutory standing under § 505(a) to sue for violations that have ceased by the time the complaint is filed."). The CWA "also bars a citizen from suing if the [Environmental Protection Agency] or State has already commenced, and is 'diligently prosecuting,' an enforcement action." *Id*. (quoting 33 U.S.C. § 1365(b)(1)(B)).

Riverkeeper's first argument is that its complaint alleges a different violation of the water pollution laws than those being prosecuted by ADEM. Riverkeeper contends that because its complaint cites violations that occurred after the Consent Decree and center around SCC's discharge of wastewater through the drainpipes at SCC's facility, the violations are not the same.

Upon review of the complaints filed by ADEM and by Riverkeeper, the documentary evidence that has been submitted, and the testimony of ADEM's representative, the Court finds there is no genuine issue of material fact in dispute that both ADEM's complaint and Riverkeeper's complaint are seeking cessation of unpermitted discharges of wastewater from SCC's sprayfields. Specifically, Dean testified that the type of violations alleged in Riverkeeper's complaint, unpermitted discharges of wastewater from SCC's sprayfields, are the same type of violations alleged in ADEM's complaint and that ADEM is pursuing cessation of through the consent decree. (Doc. 21 at 53). Moreover, correspondence from ADEM to SCC demonstrates that ADEM is aware of the discharge pipes. On February 24, 2016, ADEM notified SCC

that it cannot discharge wastewater through the pipes without a permit and directed SCC to modify the NMP to address this issue. (Doc. 7-4 at 1).

Riverkeeper also argues that ADEM's prosecution of SCC is not diligent. (Doc. 23 at 4). Specifically, Riverkeeper complains that because ADEM is not requiring SCC to obtain an NPDES permit, SCC's pollutant discharges to Cottonwood Creek or its tributaries are unlimited. (Doc. 23 at 4). Riverkeeper also summarily states that ADEM has failed to engage in "regular inspections, reports or sampling at the site." (Doc. 23 at 5). With regard to the state court action, Riverkeeper also states that the there are no regular reporting requirements regarding SCC's compliance with the Consent Decree. (Doc. 23 at 5).

"A CWA enforcement prosecution will ordinarily be considered 'diligent' if the judicial action 'is capable of requiring compliance with the Act and is in good faith calculated to do so….'" *The Piney Run Pres. Ass'n v. The Cnty. Comm'rs of Carrol Cnty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008) (quoting *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.,* 382 F.3d 743, 760 (7th Cir. 2004), *cert. denied,* 544 U.S. 913 (2005)); *see also Karr v. Hefner,* 475 F.3d 1192, 1198 (10th Cir. 2007) ("Citizen-plaintiffs must meet a high standard to demonstrate that [a government agency] has failed to prosecute a violation diligently."). "This presumption 'is due not only to the intended role of the [government] as the primary enforcer of the [CWA], but also to the fact that courts are not in the business of designing, constructing or maintaining'" wastewater sewage treatment systems. *Piney Run Pres. Ass'n*, 523 F.3d at 459 *(*quoting *Friends of Milwaukee's Rivers,* 382 F.3d at 760 (citation omitted)). "Section 1365(b)(1)(B) does not require government prosecution to be far-reaching or zealous. It

requires only diligence." *Karr,* 475 F.3d at 1197.

When ADEM discovered the same type of unpermitted discharges alleged by Riverkeeper at the SCC facility, it filed a complaint against SCC seeking injunctive relief requiring SCC to cease unpermitted discharges and seeking assessment of a penalty for permitting such discharges. The parties submitted a Consent Decree to the Marengo County Circuit Court, which was entered on August 6, 2015, aimed at resolving the issues causing the unpermitted discharges. As discussed in detail above, under the terms of the Consent Decree, SCC is required to submit and comply with an ADEM approved NMP that will ensure compliance with the CWA or must submit an application for a NPDES permit and comply therewith. SCC was also subjected to and paid monetary penalties for discharges prior to June of 2015 and, pursuant to the Consent Decree, is subject to additional monetary penalties for failure to meet certain deadlines.

The facts of this case are substantially similar to those presented in a recent Third Circuit case, *Group Against Smog and Pollution v. Shenango, Inc.*, 810 F.3d 116, 122-23 (3rd Cir. 2016), and this Court agrees with the analysis and holding in that case. Briefly, the United States Environmental Protection Agency ("EPA"), the state department of environmental protection, and a county health department filed suit against Shenango claiming violation of three emissions standards at its plant. *Id*. at 120-21. Subsequently, the parties entered into a consent decree to resolve the violations, and later the county health department entered into an additional "Consent Order and Agreement" with Shenago. *Id*.[3] After the consent decrees were entered, Group Against Smog and Pollution,

---

[3] This Court refers to these two agreements as "the consent decrees."

Incorporated ("GASP") filed a citizen suit under the Clean Air Act[4] claiming violations of the same three emission standards. *Id*. at 121.

The consent decrees entered into in *Shenango* contained the same relevant provisions as the one entered in this case: the consent decrees in both cases include a continuing jurisdiction provision, which provides that the court retains jurisdiction for the purpose of modifying, enforcing, and implementing the decree, as well as adjudicating any disputes; the decrees provide that they can only be terminated by motion with the court demonstrating compliance with the terms of the decrees; the decrees grant the government agencies the right to monitor, test, and inspect the facilities; the decrees contain a provision that states that nothing in the decrees shall be construed to relieve the companies of their obligations to comply with the terms and conditions of any applicable federal or state statute, regulations, or permits; and the decrees require the companies to take action to remedy the problems that led to the violations.

In *Shenango*, the Third Circuit rejected the district court's holding that it lacked subject matter jurisdiction based upon the diligent prosecution bar, but it affirmed dismissal of GASP's complaint on the ground that the complaint failed to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), because of the diligent prosecution bar. This Court agrees that when a state agency "diligently prosecutes an underlying action in court, the diligent prosecution bar will prohibit suits during the actual litigation as well as after the litigation has been terminated by a … consent decree…." *Shenango*, 810 F.3d at 128; *see also Piney Run Pres. Ass'n*, 523 F.3d at 459 ("…[W]hen presented with a consent decree

---

[4] The provision in the Clean Air Act which prohibits citizen suits if the state has commenced and is diligently prosecuting a civil action to require compliance with the Act is identical to the diligent prosecution bar provision in the Clean Water Act. *See* 42 U.S.C. § 7604(b)(1)(B); 33 U.S.C. § 1365(b)(1)(B).

we must be particularly deferential to the agency's expertise, and [courts] should not interpret § 1365 in a manner that would undermine the [government's] ability to reach voluntary settlements with defendants.")(internal quotations and citations omitted); *Karr*, 475 F.3d at 1198 (determining that a citizen suit was barred because "the EPA's prosecution," a consent decree previously entered into, "was diligent"). Relying upon the provisions in the consent decrees, the Third Circuit held that "[t]he circumstances of this case show ongoing diligent prosecution." *Shenango*, 810 F.3d at 129. The Third Circuit also relied upon the provisions of the consent decrees in rejecting GASP's argument that the agencies' prosecution did not require compliance with the Act noting that "[m]erely because the State may not be taking the precise action [Plaintiff] wants it to or moving with the alacrity [Plaintiff] desires does not entitle [Plaintiff] to injunctive relief." *Id.* at 132 (internal quotations and citations omitted).

In this case, under the terms of the consent decree, SCC is required to submit and comply with an ADEM approved NMP that will ensure compliance with the CWA or must submit an application for a NPDES permit and comply therewith. SCC was also subjected to and paid monetary penalties for discharges prior to April of 2015 and, pursuant to the consent decree, is subject to additional monetary penalties for failure to meet certain deadlines. Subsequent to entry of the consent decree, ADEM has inspected the site on at least three occasions, has had on-site and off-site face-to-face meetings, has had numerous telephone conferences, and has monitored SCC's progress and that of Auburn University in writing. It is not the Court's job to determine whether ADEM could do more. Riverkeeper cannot overcome the presumption of diligence merely by showing that ADEM's strategy is less aggressive than it would like or that ADEM is not requiring

the same modifications that it desires. *See Shenango*, 810 F.3d at 132; *Karr,* 475 F.3d at 1197.

Based on the pleadings, briefs and evidence on file, and the testimony from the December 7, 2016 hearing, the Court finds that Riverkeeper has failed to present sufficient evidence that ADEM is not diligently prosecuting SCC for these alleged violations. The Court finds that the ADEM enforcement action is a good faith attempt to require SCC's compliance with the CWA.

Because of the diligent prosecution bar, SCC is entitled to judgment in its favor, as a matter of law. Riverkeeper cannot overcome the diligent prosecution bar "simply by criticizing the consent order as somehow inadequate, and by asking this court to assume a supervisory role over ADEM and [SCC]." *Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC,* 637 F. Supp. 2d 983, 989 (N.D. Ala. 2009).

## V. Conclusion

Accordingly, Defendants' Motion for Summary Judgment (Doc. 7) is hereby **GRANTED** and this action is hereby **DISMISSED.** Pursuant to Federal Rule of Civil Procedure 58, judgment will issue by separate document.

**DONE** and **ORDERED** this **24**th day of **January 2017.**

 s/ Kristi K. DuBose  
**KRISTI K. DuBOSE**  
**UNITED STATES DISTRICT JUDGE**